IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                  CR. NO. S-08-0052 LKK (GGH)

       vs.                             <u>ORDER</u>

AARON JAMES VAUGHN,

        Defendant.
                               /

*Introduction and Summary*

        Defendant Vaughn has been indicted (superseding indictment) for sex trafficking offenses involving minors, some of which carry a penalty of no less than fifteen years in prison and a maximum of life imprisonment. He was also charged in one count with kidnaping. All of the alleged victims were stated to be under the age of eighteen at the time of the charged offense, and there are a total of six victims. Vaughn requested discovery of numerous items:

        1. All witness/victim names and identifying information including date of birth, address and telephone number;

        2. Criminal records of the unnamed witness/victims;

        3. Substance of any cooperating agreements by any of the government's witnesses;

1

    4. Pertinent mobile phone records;

    5. Pertinent internet records;

    6. Hotel records for Vaughn;

    7. Catch-all records concerning Vaughn;

    8. Mental health records, if any, of the witness/victims;

    9. Written summary of expert testimony;

    10. <u>Brady</u> material

    11. <u>Giglio</u> material

   Without responding category-by-category, the government generally responded that it had turned over discovery related to victims one and two as identified in the superseding indictment, and that discovery as to the other victims would be turned over shortly. The government related that it had no <u>Brady</u> exculpatory material, and that <u>Giglio</u> material would be turned over a week before trial. The remainder of the response was simply a statement that 157 pages of mostly Jencks Act material had been turned over for Victims 1 and 2, but that personal identifying information had been redacted. Apparently there were no hotel records, internet records or mobile phone records which would meet Fed. R. Crim. P. 16 criteria.

   This status of discovery was more or less accepted by the defense which was interested primarily in witness/victim identification material – unredacted witness identification material. Because the issue of the AUSA's authority to redact information was one that transcended the particular issues in this case, the undersigned called for further briefing. That briefing was received.

*Discussion*

   The United States relies on <u>United States v. Fort</u>, 472 F.3d 1106 (9th Cir. 2007), but the case is only somewhat helpful on the redaction issue here. In <u>Fort</u>, the primary issue had to do with whether the United States had to produce reports prepared by local police agencies, or whether such reports were exempt from disclosure under the federal "work product" exception,

1  Rule 16(a)(2).  One side issue had to do with the defense fall-back argument that since the
2  government had turned over redacted reports with respect to witness identification, it had waived
3  any immunity from unredacted production.  Moreover, the defense argued, and the dissent
4  accepted, that identifications could be protected by the protective order crafted by the district
5  judge.  The majority did not directly comment on the efficacy of the protective order, but
6  nevertheless held no waiver had occurred since the reports did not have to be turned over in the
7  first place, i.e., "conditioned" access to otherwise undiscoverable material did not waive any
8  Rule 16(a)(2) protections for the redacted material.  The government argues that since the Jencks
9  Act material disclosed did not have to be turned over early, it was free to "condition" access to
10 early production based on redaction.

11         Vaughn argues that United States v. Cadet, 727 F.2d 1453, 1469 (9th Cir. 1984)
12 permits the court, in its discretion, to order the disclosure of witness identification.  However,
13 that case involved the disclosure of witnesses who the government had decided *not* to call.
14 These witnesses would be material to the defense *because* the government had decided not to call
15 them, i.e., they probably had favorable or usable information for the defense; otherwise the
16 government would be calling them.  The defense primarily seeks here witnesses that the
17 government will presumably call at trial.

18         The defense also, and more correctly, relies on the recent *en banc* case of United
19 States v. W.R. Grace, 526 F.3d 499 (9th Cir. 2008) (en banc).  The majority in this case held that
20 the district court *did* have discretion to order the United States to identify its witnesses prior to
21 trial.  Id. at 513.  It stands to reason that "identify" meant more than just the name, but included
22 contact information as well.  The Ninth Circuit cited to Fort for the proposition that a protective
23 order could alleviate most witness identification problems in criminal actions, but the *en banc*
24 majority cited to the *dissent* in Fort for that proposition without attributing its cite to the dissent,
25 i.e., W.R. Grace it made it appear as if it were errantly citing to the Fort majority for this
26 proposition.  Id.

Reconciling the above authority, the undersigned finds that it has the authority and the discretion to order the government to file a witness list with appropriate identification of witnesses who will be called. Identification includes contact information along with the relation of the witness to different counts in the indictment. The undersigned first finds that *en banc* courts trump panels, and even if the en banc majority mistakenly failed to recognize that it was citing to the Fort dissent regarding the efficacy of protective orders – it still cited to it. While the Fort case remains good authority for the fact that local police reports connected with a federal investigation need not be disclosed, the case cannot be viewed after W.R. Grace as one that limits the discretion of the court to order the disclosure of witness names/identifying material. Secondly, as previously indicated, the Fort majority never actually dealt with the issue of protective orders because it had held that the reports were not disclosable in any event.

The issue then becomes whether the undersigned should exercise that discretion as the defense requests, and whether the United States has a right to redact otherwise disclosable discovery in the first place. The undersigned takes seriously the cautions expressed by the government in this type of case where it is alleged that the defendant coerced others with threats and the like to subject themselves to criminal activity. It may well be possible that a defendant could seek some type of retaliation on the persons who have brought the defendant to account. Certain provisions of the Crime Victims Rights Act (CVRA), 18 U.S.C. § 3771(a)(1) and (8) point to the need to protect victims from their assailants.[1] Finally, even the most civil of defense investigators may chill the desire of a victim/witness to testify simply because of the fears of the victim.

On the other hand, a defendant has the right to test the government's evidence, and only the most unpracticed lawyers would be satisfied with their preparation if they had no

---

[1] Most of the CVRA is concerned with giving crime victims access to the court system during the criminal proceeding pertinent to the crime of which they are a victim. There is no general concern of the CVRA to hide a victim's identity at all costs.

opportunity to meet the government's star witness(es) until the day of testimony. Why even bother with cross-examination if one cannot prepare for it? This is so especially in the case where the outcome will largely depend on the testimony of government witnesses who will relate events not otherwise observed or subject to objective test.

At bottom, government counsel underestimates the power of a protective order to obviate the present, somewhat speculative concern of harm to the witnesses involved. While there are no 100% guarantees that come with a protective order, the undersigned has no doubt that the defense lawyers in this case, and in general, the Asst. Federal Defenders in this district, would not negligently or purposefully disobey a protective order or otherwise unduly deter a government witness from testifying. Certainly, there can be little cognizable harm if the defense lawyer is simply doing a background investigation of the witness.

Finally, outside of the statutes and rules regarding filing of documents in court, the undersigned is aware of no authority which permits the government attorneys unilateral discretion in making redactions to otherwise disclosable information.

Therefore:

1. Except as provided below, the government shall identify those witnesses who will testify in this case no later than three weeks from the filed date of this order; identify will include those addresses (including e-mail) and telephone numbers known to the government; the government shall also disclose any records in its possession which relate a witness/victim's birthdate;

2. Except as provided below, the government shall identify those persons which the government attorneys know to be witnesses to events at issue in this criminal prosecution who will not be called to testify; identify is defined here as it is in paragraph 1; the same three week limitation is ordered;

3. If the government has specific concerns about the disclosure of a particular witness/person, no disclosure need be made if an ex parte motion is made within the three week

1  period to exclude disclosure of that identification; such ex parte motion shall be filed under seal
2  and contain a declaration setting forth the particular and specific dangers of disclosure related to
3  that person, i.e., general concerns about witness disclosure will not suffice; the defense shall not
4  be afforded review of the motion, and shall not in any way attempt to discover the sealed
5  information; the court will expeditiously rule on the ex parte motion;

6  　　　　　4.  Any disclosure pursuant to this order, or derived from information produced
7  pursuant to this order shall be attorneys' eyes only; "attorneys eyes" includes *a* criminal
8  investigator and *a* staff person working directly with the attorneys in this case; all shall be
9  identified to the government and they shall sign a protective order to be prepared by the
10 government which precludes the dissemination to any other person, including the defendant, of
11 the disclosed information; "disclosed information" includes any later acquired information
12 derived from the initial disclosure; this paragraph does not preclude the defense personnel
13 signing the protective order from researching about or contacting the identified person; nor shall
14 this protective order preclude dissemination of information in court proceedings; the defense
15 personnel shall take appropriate measures within their office to conceal any disclosed or derived
16 information;

17 　　　　　5.  Government and defense counsel shall make known to the presiding judge that
18 protected information is to be disclosed in a proceeding, and shall obtain direction on how to
19 produce such information;

20 　　　　　6.  In no event shall the defense personnel contact a witness/victim, who has not
21 attained the age of 18, outside the presence of a responsible adult.

22 　　　　　IT IS SO ORDERED.

23 DATED: 10/17/08                     /s/ Gregory G. Hollows
24 　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE
   vaughn.ord
25
26