IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                    CR. NO. S-08-052 LKK (GGH)

   vs.                              ORDER

AARON JAMES VAUGHN,

        Defendant.
_____/

*Introduction and Summary*

        The United States (government) has asked the undersigned to reconsider his October 17, 2008 order (as modified on October 28, 2008) requiring disclosure of victim/witness contact information pursuant to an attorneys' eyes only protective order. Two thrusts are apparent in the reconsideration motion:(1) an omnibus request to vacate the order in its entirety insofar as it required the government to give a victim/witness identification with contact information; (2) a request to vacate the order because of specific witness danger problems. The government's motion raises serious concerns, and has been thoughtfully reviewed by the undersigned.

        With one further modification, the motion for reconsideration is denied.

\\\\\

*Discussion*

Defendant opposes the reconsideration motion because it is "late" and a rehash of the same issues decided already. Because the government was unclear in its moving papers as to whom it was seeking reconsideration before, defendant understandably confuses the time limits to seek reconsideration before the district judge, and the non-specific time limits to seek reconsideration before the undersigned.[1] Because the undersigned invited the government to seek further review if specific witness information warranted, the government has acted properly. The time limits in which to seek reconsideration before the district judge, E.D. Cal. Local Rules, 12-430(j); 72-303 do not apply. While the reconsideration motion also seeks omnibus review, the undersigned in his discretion will rule upon this reconsideration request as well because of the sensitive nature of the court's previous order, and the precedent which it sets.

A. <u>Specific Witness Concerns Aside, The Government's Request to Vacate the Previous Order is Denied With One Further Modification</u>

In the following section, the undersigned will reconsider his order based on specific witness concerns. In this section, the more general objections of the government are reviewed.

The government first contends that the October 17 order (as modified October 28), requiring disclosure not only of a victim/witness list, but also victim/witness contact information, greatly overstates the <u>W.R. Grace</u> holding. The undersigned disagrees. It is true that in <u>W.R. Grace</u> no contact information was ordered, as it evidently appeared in that environmental, criminal case, that such was well known in any event once the witnesses were identified. Location of witnesses was not the <u>W.R.Grace</u> issue at bar; it was the specific identity of the numerous, potential witnesses to be called at trial that was at issue there simply because identity was key to sparing wasted preparation efforts. There needed to be some focus in the

---

[1] The undersigned clarified by telephonic contact with AUSA Melikian that he intended to seek reconsideration before the undersigned.

1 case. The specter of hundreds of witnesses is not a concern in defendant's case, but this case has
2 its own unique concerns.

3     From what is apparent in the record, there will be no videotapes of the crimes, no
4 audio tapes, and apparently no dispositive confession. There appear to be no damning scientific
5 measurements as were existing in W.R. Grace. Rather, it appears that conviction of defendant
6 for the alleged, depraved crimes will rest in large measure on the testimony of the victims. The
7 credibility of those witnesses is critical to the government's and defense case. Therefore, the
8 government's assertions that defendant, through his attorney, requires no contact with the
9 witnesses, if such contact is possible, because there are not hundreds of witnesses, is irrelevant at
10 best. The government knows full well that adequate defense preparation *in this case* involves at
11 least the attempt, whether agreed to or not by the victim/witnesses, to ascertain the bona fides of
12 their testimony. If the defense is unable to at least attempt contact, there might as well be no trial
13 – defendant should be convicted on the grand jury testimony alone.

14     Make no mistake about it, given the discovery thus far, and if the government's
15 charges have merit, defendant must already know the identity of the victims. Thus, merely
16 giving the defense confirmation of what it already knows, i.e., victim/witness identification only,
17 poses negligible risk, and more to the point, confers nothing of value in defense preparation.
18 This whole motion process has been an exercise in nothingness if formal identity of the victims is
19 only involved.

20     Moreover, with respect, the government's reliance on the concurrence in W.R.
21 Grace is mystifying. The concurrence was unconcerned with the majority's holding that a
22 witness list was necessary, and related: "This [issue] the Opinion gets absolutely right." W.R.
23 Grace, 526 F.3d at 516. The concurrence was concerned with the ability of the prosecution to
24 appeal in the first place. W.R. Grace, 526 F.3d at 516-528. Furthermore, the government's
25 exacting reading of the opinion and concurrence which provided for disclosure of only the
26 "names" of the witnesses, as opposed to additional contact information, is not the holding of the

case in that disclosure of the additional contact information was not at all in issue in that case. Again, what the defense was seeking in W.R. Grace was an identification of specific witnesses *to be called at trial*, out of hundreds of potential witnesses, so that the defense was not wasting time interviewing/preparing for witnesses who the government would not call or who had little relevance to the case.

That is why the court in United States v. Milburn, 2008 WL 2396839 (N.D. Cal. 2008), considered W.R. Grace in ordering the exchange of witness identification *and* contact information in a capital case in which witness safety was of serious concern, pursuant to an attorneys' eyes only protective order.

The government also argues that the defense has no right to "test" the government's evidence; hence no contact information should be given. The government is correct in its "testing" premise, but the argument misses the point. The government does not own the victim/witnesses, and giving the defense an opportunity to access the witnesses does not constitute giving the defense the right to formally "test" the evidence. Due process presumes that in the absence of extraordinary circumstances, each side will have access to eye and ear-witnesses to prepare their case – even if those witnesses are also alleged victims.

The undersigned is not naive, and has not ignored the potential for this defendant to wreak havoc on human life, as he already has, if the indictment's allegations are to be believed. However, the existence of an attorneys' eyes only protective order reasonably reduces the risk of harm given the due process interests at stake. Moreover, the government seemingly does not take into account the possibility that a defense investigation, the result of which demonstrates the futility of trial, may actually negate the need for a trial, with a plea being entered by defendant. Such an eventuality would lessen the potential safety concerns to victim/witnesses, while a trial could well enhance them.

The undersigned has no intent that its order provide notification to the defendant, or any possible cohort, with the contact information. As set forth in the October 17 order, the

disclosure to "defendant" will be only to the defense attorney/investigator under a strict protective order. No dissemination whatsoever will be permitted. While no protective order is absolutely leakproof, the undersigned cannot conceive now of the inadvertent disclosure since defendant's attorneys are on such notice not to disclose anything about the whereabouts of the witnesses that any disclosure would be presumed intentional. The court also understands that at least some of the victim/witnesses will be at trial. If the defendant is of the sort who would attempt to retaliate, what will stop him after the appearance? Or does the government contend that the witnesses may testify in secret? While intimidation not to testify can take place prior to trial, defendant has that capability now, or he does not. His attorneys are certainly not going to supply the information.

Finally, the government argues that if the undersigned persists in requiring the contact information to be given, it be disclosed at a time close to trial – when that trial date is known. There is merit to this argument as a general just-in-case precaution, as long as the time of disclosure is not so short so as to unduly prevent the defense time to conduct its investigation, and time enough exists to have defense counsel, if they so desire, advise defendant to forego trial in exchange for a plea.

For all of the above reasons, the government's general motion to reconsider is denied with the modification that disclosure of contact information may be withheld until the 60th day prior to a set trial.

B. <u>The Government's Specific Assertions Of Danger to the Witnesses</u>

In a filing which he has requested to be filed under seal, AUSA Melikian recounts alleged statements made by defendant to the victims, and the serious injuries suffered by the victims at the hand of defendant. Some victims told of defendant's statements regarding retaliation if they informed authorities of his actions. He also recounts the victim/witness statements to the effect that they do not wish to be contacted by the defense. All but one of the victims were very afraid of defendant. As set forth above, the undersigned invited AUSA

Melikian to provide such information if he wished no contact information to be given about the specific victim/witnesses.

The undersigned appreciates the efforts, sincere efforts, on the part of AUSA Melikian. The most troubling aspects of the given statements are those involving defendant's alleged intent to retaliate. The court must balance these presumptively serious, but long-ago, allegations against the protection afforded by a strict attorneys' eyes only protective order. In this case, the court strikes that balance in favor of disclosure.

The case has been pending for many months at present, and the government reports no retaliation or attempted retaliation despite defendant's knowledge, as he remains in custody, that he has been "snitched" upon. Nor does this case seemingly involve a sophisticated criminal organization which remains in place to do the bidding of its incarcerated leader. If this case involved the leader of the Aryan Brotherhood, for example, or the head of a crime family, it is very unlikely that disclosure of victim/witness contact information would be given under any circumstances. Nor does it seem as if the long-incarcerated defendant has any significant financial resources to bring to bear for any actual retaliation. The government theorizes that defendant has some friends in the community who might do his bidding, but this speculation is unlikely as whatever friends defendant had would be unlikely to want to become involved in a serious retaliation/intimidation crime for nothing but a past association. Generally, the first question of a criminal mind is "what's in it for me." The answer in this case is most likely nothing – except a lengthy sentence in federal prison.[2]

*Conclusion*

The government's motion for reconsideration, Docket # 38, is denied except insofar as disclosure timing previously ordered is delayed until the 60th day before a set trial

---

[2] The *ex parte* application also sets forth the reported disinclination of the victim/witnesses to meet with defense counsel. While the witnesses are certainly free not to talk with counsel or an investigator, this can be said to them directly.

1  date.  Defense counsel and those privy to them are again warned not to disseminate to defendant
2  any direct or indirect information which would disclose, or logically lead to disclosure, of the
3  victim/witnesses present whereabouts.
4        The Clerk shall file and seal the "Government's Ex Parte Motion to Exclude
5  Disclosure of Victims' Personal Information" without service upon defendant's counsel.
6  DATED: 12/10/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

vaughn52.rec